IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

JOE ANGEL ACOSTA III, #1408833        §

VS.                                   §        CIVIL ACTION NO. 9:11cv20

UNKNOWN ADMINISTRATIVE               §
SEGREGATION SUPERVISOR, ET AL.

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Joe Angel Acosta III, a prisoner confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983.  The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.    FACTS

In his complaint, Plaintiff alleges that on October 24, 2009, he experienced extreme pain from a "recurrent intestinal obstruction" while in his cell at the Eastham Unit.[1]  He alleges that the desk officer at the Unit's administrative segregation section where he is housed, who he describes as a "black female officer" with no name tag, commented that Plaintiff "smelled foul."  She mostly stayed at her desk, laughing and making comments about Plaintiff to the picket officer.  Plaintiff had been feeling the pain throughout the day and asked her to call medical at about 1:30 a.m. on October 24, 2009.  She informed him there were no medical representatives at the Unit after 6:00 p.m. and that she would ask the picket officer to call the shift supervisor.  After talking to the picket officer,

_____

[1]        Plaintiff is currently incarcerated at the Darrington Unit.

1

she returned and told him the shift supervisor would come talk to him and that he had to make arrangements to transport Plaintiff to the Estelle Unit, because of the lack of medical personnel at the Eastham Unit.  Plaintiff alleges he continued to wait and asked again to go to the hospital at about 2:00 a.m.  The desk officer told him that the sergeant was busy with hallway traffic and would be there.  Breakfast eventually arrived and the desk officer told him there had been a fight and that it would be "awhile" before the supervisor could come.  Further, they had to wait on a shared van to come for transport, which was what was talking so long.  Plaintiff alleges that he complained and asked why that delayed him from going to the hospital, especially if the fighting inmates would have to have a medical examination also; however, the desk officer could not answer and left.

Plaintiff alleges that the pain continued and he could not pass gas or stool and vomited.  He could not lie down so he sat or stood.  He contends that he was never taken to medical and the sergeant never came to see him.  When the morning medical rounds nurse visited his cell, Plaintiff asked him to go to the hospital and told him that Ms. Hough, a medical representative, had previously told him to ask for medical transport when he had this kind of problem.  Plaintiff alleges the nurse could plainly smell Plaintiff and saw he was in pain.  He told Plaintiff there was only himself and a pill nurse on duty that day, a Saturday, and that he could only note the complaint in his log.  He told Plaintiff to submit a sick call.  Plaintiff alleges he believed it futile to ask for a sick call "for something that eventually passes" and that anything done at that point would not show what he was complaining of because the "obstruction eventually passes."  Complaint at 4a.

Plaintiff contends in his complaint that he was denied access to medical attention, causing him physical and emotional pain.

2

On July 21, 2011, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181.  The Plaintiff testified as to the factual basis of his claims.  Regional Grievance Supervisor Ginger Lively, Warden Dwayne Dewberry and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

At the *Spears* hearing, Plaintiff repeated the substance of his complaint with little variation as to the interactions between himself and the desk officer and the morning rounds nurse.  He affirmed the incident occurred overnight between October 23 and 24, 2009, culminating on Saturday morning.  He testified he had a bowel obstruction problem from before he went to prison.  When it is active, he cannot pass gas or stool and cannot help smelling "foul."  He stated that the female officer laughed but would not help him.  He also commented that he is an ex-gang member with lots of enemies.  He alleged that active gang members tell prison guards not to help in situations where former gang members need help.  However, he did not specifically state that had happened in this instance.

He also added that after the morning nurse made rounds, the floor officer also came to Plaintiff's cell and could smell him, but did nothing.  He testified he received no medical assistance through the weekend.  He sent a letter by certified mail to the Unit physician on October 26, 2009, explaining the situation with his history and asked for assistance.  He also testified that on September 29, 2009, he had been seen by Nurse Practitioner Hough, who told him to ask for medical assistance

3

when a bowel obstruction became active.  He testified that he had had an X-ray done while incarcerated at the Ramsey Unit that showed an obstruction.  He stated that he was finally seen at medical on November 19, 2010, after he sent the letter.  He experienced symptoms and was lethargic after meals at that time.  The physician saw on his computer that Plaintiff has hepatitis and "bad veins."  He examined Plaintiff's testicles for a small growth of which he also complained, and his small bowels.  Plaintiff testified that the physician became upset because Plaintiff "complained about too many things."  He ordered a gastroenterology followup, but Plaintiff was never taken for it.

He also stated that the only time he had ever been allowed to simply walk in to medical for assistance was at the Ramsey Unit, before he was placed in administrative segregation.  Plaintiff testified that his problem was not a hernia, but in the small intestine.  When he was seen at the hospital in Galveston, he showed normal.  However, he testified, they did not look at 21 feet of small intestine.

Nurse Patton testified that Plaintiff's medical records showed no complaint to the rounds nurse over the time period October 24-25, 2009.  She testified that there were entries showing Plaintiff has constipation and diarrhea.  There were X-rays of the abdomen showing gas, but nothing confirming a diagnosis of bowel obstruction.  She stated that Plaintiff had been referred to the gastroenterology clinic and had been seen; the clinic's impression was no obstruction but possible irritable bowel syndrome.   She also testified that there were entries on November 4 and 6 and December 11, 2009, showing Plaintiff had been scheduled for a video gastroenterology clinic but had not been escorted to be seen; the record does not state why.

Regional Grievance Coordinator Lively testified that Plaintiff had exhausted his claims through the grievance process.  She submitted Plaintiff's grievance and classifications records and

4

stated she would obtain his medical records for the Court's use as well.[2]  Plaintiff agreed that the Court may examine his records for the purposes of this lawsuit.

The Court has reviewed Plaintiff's medical records.  They confirm that on September 8, 2009, at the Ramsey Unit, medical examination "[v]iews of the abdomen show a moderate amount of gas with distended stomach with an air fluid level present at that location.  The gas is scattered through the remainder of the small and large bowel in a nonspecific pattern.  The possibility of partial obstruction in the distal stomach might be considered."  In addition, Plaintiff was seen by Nurse Practitioner Hough on September 29, 2010, at the Eastham Unit reflecting that the X-ray received from the Ramsey Unit, conducted on September 3, 2009, showed a possible obstruction. Another X-ray from September 23, 2009, did not show an obstruction but a re-X-ray on September 29, 2009, showed a possible obstruction.  The progress note entry does not reflect whether Nurse Practitioner Hough told Plaintiff to ask for medical assistance when he was in distress.

## II.    DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors.  *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994).  To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia."  42 U.S.C. § 1983.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49,

---

[2]      Ms. Lively did submit Plaintiff's Medical Records to the Court separately.

108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61

S. Ct. 1031, 85 L. Ed. 1368 (1941)).  The Supreme Court has formulated a two-part approach to the

issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the
> State or by a rule of conduct imposed by the State or by a person for whom the State is
> responsible . . . .  Second, the party charged with the deprivation must be a person who may
> fairly be said to be a state actor.  This may be because he is a state official, because he has
> acted together with or has obtained significant aid from state officials, or because his conduct
> is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).  In

addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened

with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial

decision."  *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis*

*v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

Although Plaintiff alleges in his complaint that he has been "deprived [of] access to medical

attention," Complaint at 4a, that is clearly not the case overall.  His medical record and Nurse

Patton's testimony clearly show that he has received frequent medical care, including for his alleged

bowel obstruction.  His complaint sounds against the individuals directly involved in the incident

that occurred in the early morning hours of October 24, 2009.  Although he does not know the names

of any of the individuals involved, he contends that the Eastham Unit's on-duty third shift

administrative segregation supervisor; the rounds nurse on duty during the first shift the morning of

October 24, 2009 at the Eastham Unit; and the "security escorts" who were to drive him for medical

attention the morning of October 24, 2009, at the Eastham Unit all denied him access to medical

6

attention for his abdominal pain.  Although he does not state so, a claim for denial of medical care falls under the Eighth Amendment.

To state a claim under the Eighth Amendment for denial of medical care, a Plaintiff must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton*, 122 F.3d at 291.  It occurs when two requirements are met.  "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations and quotations omitted).  Second, the prison official must subjectively know of and disregard a substantial risk to the inmate's health or safety. *Id*. at 839-40.

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001).  "An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id*. (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).  Additionally, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107).  Furthermore, "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show

7

deliberate indifference." *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838).  Neither an incorrect diagnosis nor mere negligence nor even medical malpractice rises to the level of a constitutional violation.  *Id.*; *see also Neely v. Khurana*, 2009 WL 1605649, at *8 (N.D. Tex. June 5, 2009).

Accepting Plaintiff's allegations as true, he has failed to state a claim upon which relief may be granted under § 1983.  He alleges that he was in pain, but not that he was in actual medical danger or even under a medical necessity.  In fact, he declined to submit a request for sick call because the condition of which he complained "eventually passes."

His own allegations and his *Spears* hearing testimony negate any inference of indifference on the part of the administrative segregation supervisor inasmuch as Plaintiff admitted that a van had been called to transport him for medical examination.  He admitted in his complaint that, although the desk officer on duty had laughed at his smell, he was still kept informed as to the availability of transportation and the fact that a fight had broken out at the Unit, placing a more urgent requirement on the transportation resources.  There is no showing, or even an allegation, that administrative segregation supervisory personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino*, 239 F.3d at 756.

As to the unnamed rounds nurse, again there is no showing that he did anything other than observe Plaintiff's condition, even if painful, and determine that a referral to sick call was appropriate.  Plaintiff does not allege he informed the nurse that he was having any sort of medical emergency and, in fact, Plaintiff declined a referral to sick call because the condition would eventually pass.  Such a determination by a medical professional does not rise to deliberate

indifference.  *Id*.  Even if such a determination can be considered a lapse in professional judgment, that amounts to mere negligence and not deliberate indifference.  *See Ryals v. Aschberger*, 2009 WL 1749420, at *4 (S.D. Tex. June 18, 2009) (citing *Harris v. Hegman*, 198 F.3d 716, 719 (5th Cir. 1999); *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006) (allegations of negligence or medical malpractice "do not constitute deliberate indifference[.]")).

Finally, as to the "security escorts," Plaintiff has made no factual allegations whatsoever as to their involvement in this incident.  He has only alleged the legal conclusion that they "deprived [him] of access to medical attention and caused [him] great physical and emotional pain."  Complaint at 4a.  He has alleged nothing to support even a bare inference that they acted in any way with deliberate indifference toward him.  *Domino*, 239 F.3d at 756.  Taking his allegations at face value, Plaintiff has not even alleged that the security escorts were even aware of his existence.

At bottom, Plaintiff also does not state a claim for the monetary damages he seeks because he does not allege any conduct resulting in an actual injury to himself.  *Ryals*, 2009 WL 1749420, at *4 (citing 42 U.S.C. § 1997e(e)); *Lemons*, 412 Fed. Appx. at 673.  Plaintiff also seeks a Court order directing TDCJ to transport him to medical during "medical emergencies."  Complaint at 4, ¶ VI.  To the extent that can be construed as a request for injunctive relief, his claim still fails.  His complaint does not support an inference of deliberate indifference and, even if it supports a claim of negligence, such a claim is not in itself cognizable in a § 1983 lawsuit.  The Supreme Court has held that many acts that might constitute a violation of state tort law, such as the facts in this case, do not amount to constitutional violations.  *Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988).  Furthermore, negligence does not provide a basis for relief in a federal civil rights lawsuit.  *See Daniels v.*

*Williams*, 474 U.S. 327, 336, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) (per curiam).

For these reasons, Plaintiff's complaint fails to state a claim upon which relief may be granted and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

It is therefore

**ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**.  It is finally

**ORDERED** that the Clerk shall provide a copy of this Memorandum Opinion and Order to the Three Strikes Coordinator for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **19** day of **September, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

10